## No. 25-60462

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

STACEY ALICIA BONDS,

*Plaintiff–Appellee*,

*v.*

SONYA WOODALL, Individually and in Her Official Capacity as Chief of the Magnolia Police Department; MIKE MILHOLEN, Individually and in His Official Capacity as a Magnolia, Mississippi Police Officer; THE CITY OF MAGNOLIA, MISSISSIPPI,

*Defendants–Appellants.*

On Appeal from the United States District Court
Southern District of Mississippi, Natchez Division
Civil Action No. 5:24-CV-33-DCB-ASH

## BRIEF OF APPELLANTS

G. Todd Butler, Miss. Bar No. 102907
H. David Clark, III, Miss Bar No. 104165
Channing J. Curtis, Miss. Bar No. 106637
PHELPS DUNBAR LLP
1905 Community Bank Way, Ste. 200
Flowood, MS 39232
Telephone: 601-352-2300
Facsimile: 601-360-9777

*Attorneys for Defendants–Appellants*

PD.60111953.2

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. City of Magnolia, Defendant–Appellant;

2. Sonya Woodall, Defendant–Appellant;

3. Mike Milholen, Defendant–Appellant;

4. Phelps Dunbar, LLP, G. Todd Butler, H. David Clark, III, and Channing J. Curtis, counsel for Defendants–Appellants City of Magnolia, Sonya Woodall, and Mike Milholen;

5. Stacey Alicia Bonds, Plaintiff–Appellee;

6. Horn & Payne, PLLC, Dennis Lee Horn and Shirley Elizabeth Payne, counsel for Plaintiff—Appellee Stacey Bonds;

7. Sumrall & Welch, PLLC, Thomas Patrick Welch, Jr., counsel for Plaintiff—Appellee Stacey Bonds;

8. Judge David C. Bramlette, III, United States District Court for the Southern District of Mississippi; and

9. Magistrate Judge Andrew S. Harris, United States District Court for the Southern District of Mississippi.

SO CERTIFIED, this the 31st day of December 2025.

*/s/ Channing J. Curtis*

Channing J. Curtis
PHELPS DUNBAR, LLP
1905 Community Bank Way, Ste. 200
Flowood, MS 39232
601-352-2300 (t)
601-360-9777 (f)
channing.curtis@phelps.com

*Attorney for Defendants-Appellants*

i

**STATEMENT REGARDING ORAL ARGUMENT**

The district court wrongly denied qualified and state-law immunity at the summary-judgment stage on undisputed facts.  In particular, the district court held that there wasn't sufficient justification to arrest a teacher even though it was undisputed that the teacher told a third party that she may "kill some little kindergartners."  Oral argument is unnecessary to reverse and render, but Appellants welcome it should the Court think it helpful.

PD.60111953.2

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT .............................................. ii

TABLE OF AUTHORITIES ............................................................................ iv

STATEMENT OF JURISDICTION.....................................................................1

STATEMENT OF THE ISSUE............................................................................2

STATEMENT OF THE CASE.............................................................................2

    I.     The Undisputed Factual Background.....................................................3

    II.    The Case Before the District Court ........................................................6

SUMMARY OF THE ARGUMENT ....................................................................8

STANDARD OF REVIEW .................................................................................8

ARGUMENT .................................................................................................10

    I.     Defendants Were Entitled to Summary Judgment on Bonds's Federal Claims.................................................................................................10

         A.    Bonds Cannot Demonstrate a Constitutional Violation Attributable to Any Defendant. ..........................................................................11

         B.    Bonds Cannot Overcome Qualified Immunity. .............................29

         C.    Bonds Cannot Establish Municipal Liability.................................31

    II.    Defendants Are Also Entitled to Summary Judgment on Bonds's State-Law Claims. .................................................................................37

CONCLUSION..............................................................................................41

CERTIFICATE OF COMPLIANCE.................................................................44

CERTIFICATE OF SERVICE ........................................................................43

PD.60111953.2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Technology Building Solutions, LLC v. City of Jackson*,
817 F.3d 163 (5th Cir. 2016) ......................................................34

*Alexander v. Smith*,
561 F. App'x 421 (5th Cir. 2014) (per curiam) .....................................21

*Armstrong v. Ashley*,
60 F.4th 262 (5th Cir. 2023) ......................................................23

*Baker v. McCollan*,
443 U.S. 137 (1979)............................................................13, 35

*Benfield v. Magee*,
945 F.3d 333 (5th Cir. 2019) ......................................................29

*Bigford v. Taylor*,
834 F.2d 1213 (5th Cir. 1988) .....................................................36

*Brown v. Lyford*,
243 F.3d 185 (5th Cir. 2001) ...................................................12, 29

*Carbalan v. Vaughn*,
760 F.2d 662 (5th Cir. 1985) ......................................................36

*Celotex Corporation v. Catrett*,
447 U.S. 317 (1986)................................................................9

*City of Los Angeles v. Heller*,
475 U.S. 796 (1986)...............................................................32

*Clark v. Sweeney*,
607 U.S. __, 2025 WL 3260170 (2025) (per curiam) ....................................39

*County of Riverside v. McLaughlin*,
500 U.S. 44 (1991)..............................................................25, 26

*Cuadra v. Houston Independent School District*,
626 F.3d 808 (5th Cir. 2010) ......................................................23

*Cunningham v. City of West Point*,
380 F. App'x 419 (5th Cir. 2010) ........................................................................36

*Davidson v. City of Strafford*,
848 F.3d 384 (5th Cir. 2017) ...............................................................................13

*Davis v. Hodgkiss*,
11 F.4th 329 (5th Cir. 2021) ................................................................................13

*Duffie v. United States*,
600 F.3d 362 (5th Cir. 2010) ..........................................................................23, 26

*Fields v. City of South Houston*,
922 F.2d 1183 (5th Cir. 1991) .............................................................................36

*Forsyth v. Barr*,
19 F.3d 1527 (5th Cir. 1994) ......................................................................9, 39, 41

*Gerstein v. Pugh*,
420 U.S. 103 (1975)...........................................................................24, 25, 26, 31

*Glenn v. City of Tyler*,
242 F.3d 307 (5th Cir. 2001) ...............................................................................13

*Graham v. Connor*,
490 U.S. 386 (1989).............................................................................................23

*Groden v. City of Dallas*,
826 F.3d 280 (5th Cir. 2016) ...............................................................................34

*Haggerty v. Texas Southern University*,
391 F.3d 653 (5th Cir. 2004) ...............................................................................12

*Hawkins v. City of Lexington*,
2021 WL 5236017 (S.D. Miss. July 9, 2021).......................................................37

*Hinojosa v. Tarrant County*,
2009 WL 1309218 (N.D. Tex. 2009) ...................................................................34

*Janvey v. Libyan Investment Authority*,
840 F.3d 248 (5th Cir. 2016) (per curiam) .......................................................1, 32

v

*Johnson v. Bryant*,
  1995 WL 29317 (5th Cir. Jan. 17, 1995) (per curiam)........................................26

*Johnson v. City of San Antonio*,
  2023 WL 3019686 (5th Cir. Apr. 20, 2023) (per curiam)................................20

*Johnson v. Harris County*,
  83 F.4th 941 (5th Cir. 2023) ...............................................................................33

*Johnson v. Moore*,
  958 F.2d 92 (5th Cir. 1992)................................................................................36

*Jones v. Lowndes County*,
  678 F.3d 344 (5th Cir. 2012) ...................................................................26, 28, 35

*Estate of Joseph v. Bartlett*,
  981 F.3d 319 (5th Cir. 2020) ......................................................................9, 30, 31

*Kilcrease v. City of Tupelo*,
  385 So. 3d 393 (Miss. Ct. App. 2022)...................................................................5

*Kinney v. Weaver*,
  367 F.3d 337 (5th Cir. 2004) (en banc) ...............................................................8

*Krueger v. Reimer*,
  66 F.3d 75 (5th Cir. 1995) ..................................................................................36

*Lampton v. Diaz*,
  661 F.3d 897 (5th Cir. 2011) (per curiam) ...........................................................1

*Lytle v. Bexar County*,
  560 F.3d 404 (5th Cir. 2009) .........................................................................1, 25

*Doe ex rel. Magee v. Covington County School District*,
  675 F.3d 847 (5th Cir. 2012) .............................................................................32

*McClelland v. Katy Independent School District*,
  63 F.4th 996 (5th Cir. 2023) ..............................................................................29

*Monell v. Department of Social Services of City of New York*,
  436 U.S. 658 (1978)......................................................................................32, 33

vi

*Moore v. Owens*,
   244 F. App'x 547 (5th Cir. 2007) (per curiam) .................................................36

*Morin v. Caire*,
   77 F.3d 116 (5th Cir. 1996) .......................................................................32

*Morrow v. Meachum*,
   917 F.3d 870 (5th Cir. 2019) .....................................................................11

*Oliver v. Noxubee County Tax Department*,
   200 F.3d 815 (5th Cir. 1999) (per curiam) ...................................................37

*Oliver v. Scott*,
   276 F.3d 736 (5th Cir. 2002) .....................................................................21

*Orr v. Copeland*,
   844 F.3d 484 (5th Cir. 2016) .......................................................................9

*Pearson v. Callahan*,
   555 U.S. 223 (2009)...................................................................................29

*Peterson v. City of Fort Worth*,
   588 F.3d 838 (5th Cir. 2009) .....................................................................33

*Peterson v. Heymes*,
   931 F.3d 546 (6th Cir. 2019) .....................................................................32

*Piotrowski v. City of Houston*,
   237 F.3d 567 (5th Cir. 2001) .....................................................................10

*Resendiz v. Miller*,
   203 F.3d 902 (5th Cir. 2000) (per curiam) ...................................................13

*Rizzo v. Goode*,
   423 U.S. 362 (1976)...................................................................................26

*Rollins v. Home Depot USA*,
   8 F.4th 393 (5th Cir. 2021) ........................................................................19

*Roper v. Blanton*,
   2025 WL 3252321 (5th Cir. Nov. 21, 2025) (per curiam) ..........................12, 16

vii

*Scott v. City of Mandeville*,
   69 F.4th 249 (5th Cir. 2023) ......................................................................12, 18

*Shumpert v. City of Tupelo*,
   905 F.3d 310 (5th Cir. 2018) ............................................................................10

*Smith v. City of Wiggins*,
   2015 WL 6872230 (S.D. Miss. 2015).................................................................37

*Smith v. Gonzalez*,
   670 F.2d 522 (5th Cir. 1982) ............................................................................13

*Stapleton v. Lozano*,
   125 F.4th 743 (5th Cir. 2025) .......................................................................1, 32

*Strong v. Nicholson*,
   580 So. 2d 1288 (Miss. 1991).........................................................................40

*Stults v. Conoco, Incorporated*,
   76 F.3d 651 (5th Cir. 1996) ................................................................................9

*Terry Black's Barbecue, LLC v. State Automobile Mutual Insurance
   Company*,
   22 F.4th 450 (5th Cir. 2022) ......................................................................22, 38

*Thornton v. General Motors Corporation*,
   136 F.3d 450 (5th Cir. 1998) ............................................................................32

*Turner v. Lieutenant Driver*,
   848 F.3d 678 (5th Cir. 2017) ......................................................................20, 26

*United States v. Garcia*,
   179 F.3d 265 (5th Cir. 1999) ............................................................................13

*United States v. Wadley*,
   59 F.3d 510 (5th Cir. 1995) ..............................................................................13

*University of Mississippi Medical Center v. Oliver*,
   235 So. 3d 75 (Miss. 2017)...............................................................................40

*Vann v. City of Southaven*,
   884 F.3d 307 (5th Cir. 2018) ............................................................................31

viii

*Verastique v. City of Dallas*,
106 F.4th 427 (5th Cir. 2024) ...................................................................33

*Walton v. Dawson*,
752 F.3d 1109 (8th Cir. 2014) ..................................................................30

*Watson v. Boyd*,
2 F.4th 1106 (8th Cir. 2021) .....................................................................30

*District of Columbia v. Wesby*,
583 U.S. 48 (2018) ..............................................................................10, 31

*Whisenant v. City of Halmot City*,
106 Fed. App'x 915 (5th Cir. 2004) ..........................................................36

*Zarnow v. City of Wichita Falls*,
614 F.3d 161 (5th Cir. 2010) ....................................................................35

**Statutes**

28 U.S.C. § 1292 ............................................................................................31

42 U.S.C. § 1983 .....................................................................................*passim*

Miss. Code Ann. § 11-46-5 ......................................................................37, 40

Miss. Code Ann. § 11-46-7 .............................................................................37

Miss. Code Ann. § 21-19-15 ..........................................................................34

Miss. Code Ann. § 21-23-7 ...............................................................................5

Miss. Code Ann. § 97-3-82 .............................................................................17

Miss. Code Ann. § 97-7-75 .......................................................5, 14, 15, 16, 17, 40

Miss. Code Ann. § 97-35-13 ......................................................................18, 20

Miss. Code Ann. § 97-35-15 ..................................................................18, 19, 20

Miss. Code Ann. § 99-3-28 ......................................................................27, 28

## STATEMENT OF JURISDICTION

The district court denied Defendants' motion for summary judgment on August 21, 2025. ROA.653–77. The next day, August 22, 2025, Defendants timely noticed this appeal. ROA.683. Because the district court's denial of summary judgment was a denial of qualified immunity, as well as a denial of immunity under the Mississippi Tort Claims Act, it is "immediately appealable under the collateral order doctrine." *Lytle v. Bexar Cnty.*, 560 F.3d 404, 408 (5th Cir. 2009) (quotation marks and citation omitted); *Lampton v. Diaz*, 661 F.3d 897, 899 (5th Cir. 2011) (per curiam) ("The denial of immunity under Mississippi law, like a denial under federal law, is appealable under the collateral order doctrine."). This Court also has pendent jurisdiction over other "closely related" issues. *See, e.g.*, *Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 256 (5th Cir. 2016) (per curiam); *see also Stapleton v. Lozano*, 125 F.4th 743, 753–54 (5th Cir. 2025) (reviewing *Monell* claim on interlocutory appeal of qualified-immunity denial).

1

## STATEMENT OF THE ISSUE

Whether Defendants are entitled to summary judgment due to Bonds's failure to adequately allege a constitutional violation, her inability to overcome the Individual Defendants' assertions of qualified immunity and state-law immunity, and her inability to establish municipal liability against the City?

## STATEMENT OF THE CASE

After she was arrested for threatening to kill her entire classroom full of kindergartners and detained over the weekend, Stacey Bonds sued the City of Magnolia, Chief of the Magnolia Police Department Sonya Woodall, and Magnolia Police Officer Mike Milholen under § 1983, asserting unlawful-arrest, false-imprisonment, malicious-prosecution, and due-process claims. ROA.11–28. She also brought unlawful-arrest, false-imprisonment, and malicious-prosecution claims under Mississippi law. *Id.* When Defendants moved for summary judgment, pointing out Bonds's inability to demonstrate a constitutional violation, overcome qualified immunity, establish municipal liability, or overcome state-law immunity, ROA.158; ROA.334–55, Bonds offered nothing in response that would enable her to succeed on any of her claims, ROA.567–89. Nevertheless, the district court denied Defendants' motion for summary judgment. ROA.653–77. This Court should reverse and render.

## I.    The Undisputed Factual Background

On the morning of April 13, 2023, Stacey Bonds—a kindergarten teacher in Magnolia, Mississippi—arrived at school and experienced trouble locking her vehicle with an app on her phone. ROA.285; ROA.410–12; ROA.434–35. Calling a manufacturer's representative for assistance and growing frustrated, Bonds twice warned the representative that her "aggression level" was "very high" and threatened to "kill some little kindergartners" if the manufacturer couldn't fix her app and help her lock her car.[1] The manufacturer's representative assisted Bonds in locking her car through an app, and Bonds thanked the representative, saying "you have saved twenty children from being killed."[2] It is undisputed that Bonds made those statements before school began that morning. ROA.176–77. And Bonds herself testified that her statements were made outside the scope of her duties as a schoolteacher. ROA.456.

Later that day, the school's principal knocked on Bonds's classroom door, asking her to step outside. ROA.180; ROA.412. In the hallway, Bonds met a school

---

[1] Recording of Phone Call at 00:30–1:24 ("So, is there anyway that you can help me this morning so that I can teach my class and not kill some little kindergartners?"); ROA.388 ("So, is there any way that you [can] help me this morning so that I can teach my class and not kill some little [k]indergartners?"); *see also* ROA.411 (confessing to saying, "Please help me, so that I won't kill 20 kindergartners today.").

[2] Recording of Phone Call at 4:50–4:57; ROA.389 ("Thank you very much. You have alleviated my anxious morning and you have saved 20 children from being killed."); *see also* ROA.411 (confessing to saying that the representative "just saved the lives of people.").

3

resource officer and two police officers who asked Bonds if she made a call that morning in which she "threaten[ed] to kill kindergarten students." ROA.180–81. Bonds confirmed that she made those statements but said that they had been "taken out of context," characterizing her statements as "a poor excuse for comedy" and a "poor choice of words."[3] ROA.181; ROA.412. Bonds was escorted back to her classroom to retrieve her belongings and then taken to the principal's office where she was read her *Miranda* rights, ROA.374, before discussing the situation with the officers, the principal, the superintendent, and the assistant superintendent in more detail. ROA.185–86.

Following that conversation, the officers requested that Bonds come to the Sheriff's Department to make a formal statement, and Bonds complied. ROA.187–88. There, Bonds was again read her rights, and she gave a formal verbal and written statement. ROA.189–93. In her written statement, Bonds admitted to saying, "Please help me, so that I won't kill 20 kindergartners today." ROA.411. She further admitted to thanking the representative for her help, adding that the representative had "just saved the lives of people." ROA.411; *see also supra* note 2.

---

[3] Although Bonds maintains that her words were "taken out of context" and that she never meant anything by her threatening remarks, those statements were especially concerning here given Bonds's criminal history and her history of anger issues. ROA.422–23. In 2012, Bonds was convicted of simple assault after she became angry and hit another woman in the face, resulting in Bonds attending required anger-management courses. ROA.422. Her phone call with the car manufacturer's representative exhibits similar "aggression," as she put it. Recording of Phone Call at 00:30–1:24.

4

Based on that confession, Officer Milholen arrested Bonds without a warrant and executed a criminal affidavit that same day, charging Bonds with feloniously making terroristic threats in violation of Miss. Code Ann. § 97-7-75 when she "threaten[ed] to kill a classroom of twenty (20) kindergarten students." ROA.522; ROA.237; ROA.299; ROA.193–94. Officer Milholen processed Bonds, booked her into the Pike County Detention Center, and left her in the jail's custody. ROA.202.

The next day, April 14, the City Clerk sent Bonds's "case file documents, including [her] charging criminal affidavit, . . . to Magnolia Municipal Court Judge Shequeena McKenzie," requesting that Judge McKenzie set a bond for Bonds. ROA.244. Judge McKenzie called the City Clerk and "instructed that, based on the documents in the case file she reviewed, Bonds was to be held in jail without bond until a court appearance on Monday, April 17, 2023."[4] ROA.244.

Bonds remained in jail until the following Monday, when she appeared before Judge McKenzie for a hearing that served both as an initial appearance and preliminary hearing. ROA.202; ROA.245–46. At that hearing, Judge McKenzie set Bonds's bond at $750,000. ROA.246; ROA.206. Bonds was released on her own

---

[4] Of note, Mississippi's municipal courts are not courts of record. *Kilcrease v. City of Tupelo*, 385 So. 3d 393, 395 n.1 (Miss. Ct. App. 2022) (citing Miss. Code Ann. § 21-23-7). Nevertheless, the record in this case reflects these occurrences by the sworn declaration of Trideana Lenard, the Court Clerk for the City of Magnolia. ROA.244.

recognizance two days later.  ROA.211–12.  Her case was later presented to a Grand Jury in September 2023, which returned a No Bill.  ROA.521; *see also* ROA.227.

## II.    The Case Before the District Court

On March 29, 2024, Bonds sued the City of Magnolia, Chief Woodall, and Officer Milholen, bringing false-arrest, false-imprisonment, and malicious-prosecution claims under § 1983 and Mississippi law as well as an ambiguous Fourth and Fourteenth Amendment due-process claim under § 1983.[5]  ROA.25–27.

On the undisputed facts above, Defendants moved for summary judgment. ROA.158–59.  As to Bonds's § 1983 claims, Defendants argued that Bonds lacked evidence creating a genuine dispute of material fact as to whether a constitutional violation occurred.  ROA.340.  And even assuming that Bonds could present sufficient evidence of a constitutional violation, Defendants maintained that Bonds could not overcome qualified immunity or establish municipal liability.  ROA.348–51.  As to her state-law claims, Defendants argued that Bonds had no evidence upon which she could meet the standards imposed by the Mississippi Tort Claims Act ("MTCA") for establishing liability or succeeding on her claims against Defendants.

Bonds's scatter-shot response argued that, because "[t]here was never a real threat involved," there was no probable cause to arrest her, ROA.567; ROA.578, and

---

[5] As the district court noted, "[t]he Complaint claims that Ms. Bonds was deprived of liberty without due process of law in violation of the Fourth and Fourteenth Amendments to the United States Constitution, but it does not provide any further details."  ROA.666.

6

that she never received a probable cause hearing in <u>circuit court</u> on the charges pending in <u>municipal court</u> within the time required by the United States Constitution. ROA.580–84. But Bonds offered no authority for the proposition that her *post hoc* justifications for her statements, *i.e.*, that she wasn't serious when she threatened to kill the kindergartners, negate the fact that probable cause existed for making them. And Bonds pointed to no evidence that she was entitled to a probable-cause hearing in <u>circuit court</u>, rather than <u>municipal court</u>, or that Defendants' conduct, as opposed to Judge McKenzie's Friday order, directly caused a delay in receiving such a hearing in municipal court. What's more, Bonds offered no evidence or argument to establish municipal liability, ROA.584, and she offered no authority demonstrating that Officer Milholen or Chief Woodall violated clearly established law, ROA.584–87. Further, as to her state-law claims, Bonds made no argument that Defendants could be held liable under the MTCA, merely citing the standard without articulating how she satisfied it. ROA.584.

Despite the total inadequacy of Bonds's response, the district court denied Defendants' motion for summary judgment, finding genuine issues of material fact as to each of Bonds's claims, finding a genuine issue of material fact as to whether Chief Woodall was a final policymaker for the City, and denying qualified immunity because the court found "genuine issues of material fact" as to "whether a reasonable

7

officer could have believed that Ms. Bonds's arrest was unlawful." ROA.653–77. Defendants timely noticed this appeal. ROA.683.

## SUMMARY OF THE ARGUMENT

It is undisputed that Bonds suggested to a third-party that she may "kill some little kindergartners." It is also undisputed that the third-party relayed her concerns to law enforcement. There is no world in which these undisputed facts do not satisfy the probable-cause standard or justify an investigation and arrest.

In technical terms, Bonds cannot establish a constitutional violation on the undisputed facts of this case due to the existence of probable cause. Nor does she have evidence that can establish a causal connection between the Defendants' conduct and her alleged weekend-long detention. But even assuming that she could, she cannot point to any authority which clearly establishes that officers violate the Constitution by arresting a suspect for threatening to kill a room full of kindergartners or that officers violate the Constitution by complying with a court directive. Bonds also fails to articulate any argument as to how she might establish municipal liability or overcome state-law immunity.

This Court should reverse and render.

## STANDARD OF REVIEW

This Court ordinarily reviews a "denial of summary judgment *de novo*, applying *the same standard* as the district court." *Kinney v. Weaver*, 367 F.3d 337,

347–48 (5th Cir. 2004) (en banc).  Under that standard, a defendant's burden when moving for summary judgment is to merely "point out the absence of evidence supporting the [plaintiff's] case." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (quotation marks and citation omitted).  Once the movant meets this burden, the nonmovant must go beyond the pleadings and "identify specific evidence in the record, and articulate the 'precise manner' in which that evidence support[s] [his] claim."  *Id.* (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).  Allegations without substance will not defeat summary judgment.  *Celotex Corp. v. Catrett*, 447 U.S. 317, 321 (1986).  "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted."  *Stults*, 76 F.3d at 656 (quotation marks and citations omitted).

"Qualified immunity changes the nature of the summary-judgment burden, how and when the burden shifts, and what it takes to satisfy the burden."  *Estate of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020).  "When a public official makes 'a good-faith assertion of qualified immunity,' that 'alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.'  In other words, to shift the burden to the plaintiff, the public official need not show (as other summary-judgment movants must) an absence of genuine disputes of material fact and entitlement to judgment as a matter of law."  *Id.* at 329–30 (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)).

"Once the burden is on the plaintiff, things briefly sound familiar again: The plaintiff must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief for a constitutional violation." *Id.* at 330. "But, to overcome qualified immunity, the plaintiff's version of those disputed facts must also constitute a violation of clearly established law." *Id.* "This requires the plaintiff to 'identify a case'—usually, a 'body of relevant case law'—in which 'an officer acting under similar circumstances . . . was held to have violated the [Constitution].'" *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018)).

## ARGUMENT

Bonds asserts both federal and state-law claims. Because the governing frameworks of those claims differ, Defendants first (I) address Bonds's federal claims before (II) addressing her state-law claims. For the reasons that follow, Defendants were entitled to summary judgment as to each of Bonds's claims.

### I. Defendants Were Entitled to Summary Judgment on Bonds's Federal Claims.

The legal framework that applies to Bonds's federal claims is well-settled. To establish liability against the City, Bonds "must demonstrate three elements: 'a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.'" *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th

10

Cir. 2001)). And for there to be personal liability against the individual defendants, Bonds must overcome qualified immunity, meaning she must show that (1) the individual Defendants violated a federal right of hers and (2) that the "right at issue was 'clearly established' at the time of the alleged misconduct." *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (citation and quotation marks omitted; alteration accepted).

Within that well-established framework, Bonds's claims are totally deficient. There can be no liability against Defendants because (A) Bonds has come forward with no evidence that establishes an underlying constitutional violation. And even if she had, there is still no liability because Bonds cannot (B) overcome qualified immunity as to Chief Woodall or Officer Milholen or (C) establish municipal liability against the City. For all those reasons, reversal is required.

### A. Bonds Cannot Demonstrate a Constitutional Violation Attributable to Any Defendant.

Bonds asserts four claims against each Defendant under § 1983: a false-arrest claim, a false-imprisonment claim, a deprivation-of-liberty due-process claim, and a malicious-prosecution claim. ROA.25–26. Viewing the facts in a light most favorable to her at the summary-judgment stage, Bonds fails to offer sufficient evidence supporting any underlying constitutional violation that is attributable to these Defendants' conduct. Therefore, each of her claims fails.

### 1. Bonds's false-arrest, false-imprisonment, and malicious-prosecution claims fail.

Bonds's false-arrest, false-imprisonment, and malicious-prosecution claims fail because probable cause existed to arrest her for threatening to kill a room full of kindergartners after a third party reported those threats to law enforcement. Some of those claims also fail for want of evidence that the underlying constitutional injury was directly caused by Defendants' conduct. Finally, Bonds's federal malicious-prosecution claim fails for the additional reasons that she has abandoned that claim and has failed to point to any evidence of malice.

*Probable Cause Defeats Three of Bonds's Claims.* Three of Bonds's claims—her false-arrest, false-imprisonment, and malicious-prosecution claims—hinge upon the same probable-cause inquiry. *See, e.g.*, *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) (explaining that "no probable cause" is an element of all three claims); *see also Roper v. Blanton*, 2025 WL 3252321, at *1 (5th Cir. Nov. 21, 2025) (per curiam) ("All three of Roper's claims—false arrest, false imprisonment, and malicious prosecution—require a showing that there was no probable cause to arrest and charge him with making a terroristic threat.").

"Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Scott v. City of Mandeville*, 69 F.4th 249, 255 (5th Cir. 2023) (quoting *Haggerty v.*

12

*Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004)). "The standard for analyzing probable cause is whether, under the totality of the circumstances, there is a 'fair probability' that a crime occurred." *Id.* (quoting *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999)). "[T]he requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark." *Ibid.*

The "ultimate determination of probable cause . . . is a question of law." *Davis v. Hodgkiss*, 11 F.4th 329, 334 (5th Cir. 2021); *see also Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000) (per curiam) (holding that where "there is substantial agreement between the parties concerning the facts of [the] case, [this Court] focus[es] on the ultimate determination of whether there was probable cause for the arrest, which is a question of law that [this Court] review[s] de novo." (citing *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995)). If probable cause existed to arrest Bonds "for any crime," not just the one with which she was charged, then her claims fail as a matter of law.[6] *Davidson v. City of Strafford*, 848 F.3d 384, 392 (5th Cir. 2017) ("This probable cause may be for any crime and is not limited to the crime that the officers subjectively considered at the time they perform an arrest.").

---

[6] Moreover, where probable cause exists, officers are not required to secure an arrest warrant before placing a suspect under arrest. *See Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). Such a warrantless arrest based on probable cause will not violate the Fourth Amendment regardless of the outcome of a resulting criminal prosecution. *Smith v. Gonzalez*, 670 F.2d 522 (5th Cir. 1982); *accord Baker v. McCollan*, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested . . . .").

13

PD.60111953.2

In the presence of Officer Milholen, Bonds executed an official statement in which she admitted that during a call seeking technical assistance from her car manufacturer's representative, she said, "Please help me, so that I won't kill 20 kindergartners today." ROA.411. That fact is undisputed, and Bonds has never disputed making statements to that effect. Therefore, as a matter of law, probable cause existed to arrest Bonds under at least four Mississippi statutes based solely upon that undisputed admission. The district court committed legal error in concluding otherwise.

For starters, probable cause existed to arrest Bonds for making a terroristic threat under Miss. Code Ann. § 97-7-75, which provides:

(a) A person commits the offense of making a terroristic threat when the person makes a threat to commit a crime of violence or a threat to cause bodily injury to another person if the threat does in fact cause a reasonable expectation or reasonable fear of the imminent commission of an offense and if, in making the threat, the person has the intent to:
    (i)    Intimidate or coerce a civilian population or segment of a civilian population; or
    (ii)    Influence or affect, by intimidation or coercion, the policy or conduct of a unit of government, educational institution, business or segment of the civilian population.
(b) It is not a defense to a prosecution under this section that, at the time the defendant made the terroristic threat, the defendant did not have the intent or capability to actually commit the specified offense, nor is it a defense that the threat was not made to a person who was a subject or intended victim of the threatened act.

Miss. Code Ann. § 97-7-75(2). Despite the clarity of that statute, the district court concluded that a material question of fact persists as to whether probable cause

14

existed to arrest Bonds under this statute because Bonds ended the phone call by saying, "You just saved 20 kindergarteners [sic] lives," which according to the district court "negate[d] the 'imminent commission' of the offense." ROA.662. That conclusion rests upon a faulty legal premise.

The district court reasoned that someone making a criminal, terroristic threat can avoid arrest and extinguish probable cause by merely making a subsequent statement that they no longer intend to carry out the threat. But that can't be correct because under § 97-7-75 a threat once made is a threat finally made. Indeed, the statute doesn't require a threat to persist through the time of arrest; it doesn't even require that a speaker have the "intent or capability to actually commit the specified offense." Miss. Code Ann. 97-7-75(2)(b). Rather, the statute simply criminalizes any attempt to "[i]nfluence or affect, by intimidation or coercion, the . . . conduct of [others]" by making threats of violence or bodily injury which cause a reasonable expectation of fear of the imminent commission of a violent offense. *Id.* at (a).

Here, there is no question as to whether Bonds made a statement that requested help by threatening a crime of violence. She admitted to Officer Milholen that she said, "***Please help me, so that I won't kill*** 20 kindergartners today." ROA.411 (emphasis added). And in her summary-judgment briefing, Bonds puts it clearly— in making that statement, "all [she] was trying to accomplish was for [the representative] to make the app on her cell phone accessible so that she could lock,

15

unlock, and start her car." ROA.586. Indeed, the recording reflects that Bonds actually stated, "So, is there anyway that you can *help me* this morning *so that I can* teach my class and *not kill some little kindergartners?*" Recording of Phone Call at 00:30–1:24 (emphasis added); *see also* ROA.388. The undisputed record evidence demonstrates that Bonds used threats to achieve the end of having her vehicle's app fixed, whether she intended to follow through with those threats or not.

What's more is that is exactly how the uninterested third party on the other end of the phone call took Bonds's threats. She responded to Bonds's threats by assisting Bonds, and only after receiving the requested aid did Bonds then state, "You just saved 20 kindergarteners [sic] lives." ROA.662 (quoting ROA.235). Bonds's closing statement did not negate the previously made threat, as the district court concluded; rather, it confirmed that Bonds had made a threat of violence and that the car manufacturer's representative on the other end of the call had prevented the threatened violence by giving Bonds the requested aid. Those undisputed facts establish a violation of Miss. Code Ann. § 97-7-75, and therefore, probable cause existed to arrest Bonds. *Cf. Roper*, 2025 WL 3252321, at *1 (5th Cir. Nov. 21, 2025).

The district court suggested that Bonds's *post hoc* justifications for her statement—*i.e.*, that the threat was made as "a joke because [Bonds] was frustrated"—somehow defeat probable cause to arrest Bonds under § 97-7-

16

PD.60111953.2

75(2)(a)(ii). But neither the district court nor Bonds offered any authority for the proposition that an arrestee can retroactively destroy probable cause by claiming to have made a terroristic threat in jest. And neither the court nor Bonds offered any authority for the proposition that law-enforcement officers must accurately decipher whether a threat was made as a joke before arresting individuals under § 97-7-75(2)(a)(ii). To make matters worse, the district court came to that conclusion in the face of the statute's plain text, which criminalizes threatening statements whether or not the speaker intended or even had the capability to carry out the threatened act. Miss. Code Ann. § 97-7-75(b). Thus, probable cause existed to arrest Bonds.

For similar reasons, probable cause also existed to arrest Bonds under Miss. Code Ann. § 97-3-82(2), which provides:

> A person is guilty of extortion if he purposely obtains or *attempts to obtain . . . any* reward, *favor*, or advantage of any kind *by threatening to inflict bodily injury on any person or by committing or threatening to commit any other criminal offense . . . .*

Miss. Code Ann. § 97-3-82(2) (emphasis added). Because Bonds indisputably threatened to kill twenty kindergartners in an attempt to have the car manufacturer's representative fix her car's app, probable cause existed to arrest her for extortion too. ROA.411 ("Please help me, so that I won't kill 20 kindergartners today.").

Nevertheless, the district court concluded that there was a material dispute of fact as to whether Bonds "made the statement to induce the agent to fix her [car's] app." ROA.664. But the relevant determination doesn't turn on whether a threatener

17

necessarily intended to induce a listener to action; indeed, probable cause in this circumstance doesn't equate to guilt beyond a reasonable doubt. Instead, the relevant inquiry is whether under the relevant facts and circumstances at the time of the arrest, a reasonable person could sufficiently conclude that there was a "fair probability" that the suspect had committed a crime—here, extortion. *Scott*, 69 F.4th at 255. Bonds's statement established at least a fair probability that she sought to obtain a favor from the car manufacturer's representative by way of threat—that's the literal interpretation of what she said and the characterization that she gave the purpose of that call before the district court. ROA.388; ROA.411; ROA.586. The district court erred as a matter of law by concluding that a material fact dispute existed as to probable cause because Bonds claimed after the fact that her threats were a joke.

There are also two breach-of-the-peace statutes under which probable cause existed to arrest Bonds. Miss. Code Ann. § 97-35-13 provides:

> Any person who shall enter any public place of business of any kind whatsoever, or upon the premises of such public place of business, or any other public place whatsoever, in the State of Mississippi, and while therein or thereon shall create a disturbance, or a breach of the peace, in any way whatsoever, including, but not restricted to, loud and offensive talk, *the making of threats or attempting to intimidate, or any other conduct which causes a disturbance or breach of the peace* or threatened breach of the peace, shall be guilty of a misdemeanor . . . .

Miss. Code Ann. § 97-35-13 (emphasis added). And Miss. Code Ann. § 97-35-15 provides:

18

> Any person who disturbs the public peace, or the peace of others, by violent, or loud, or insulting, or profane, or indecent, or offensive, or boisterous conduct or language, or *by intimidation*, or *seeking to intimidate any other person or persons*, or by conduct either calculated to provoke a breach of the peace, *or by conduct which may lead to a breach of the peace*, or by any other act, shall be guilty of a misdemeanor . . . .

Miss. Code Ann. § 97-35-15 (emphasis added).  For similar reasons, Bonds's statement suffices to constitute intimidation under either statute and therefore a criminal disturbance or breach of peace.

The district court concluded that because "there is no indication that any peace was disturbed" and because "there is a question as to whether [Bonds] was seeking to intimidate the [car manufacturer's representative] or was just expressing her frustration at her own situation," a material dispute of fact existed as to whether probable cause existed to arrest Bonds under either statute.  ROA.664–65.  But assuming the existence of either dispute,[7] neither is material to the probable-cause inquiry.

---

[7] Bonds didn't raise a dispute that "there is no indication that any peace was disturbed"; rather, she acknowledged that there was evidence of a breach of peace—the car manufacturer's representative called the police and reported a breach of the peace. ROA.588. Thus, the district court's conclusion that "there is no indication that any peace was disturbed" is an inaccurate reflection of the record and is an inaccurate characterization of Bonds's argument below. Moreover, Bonds did not argue below that either breach-of-the-peace statute was inapplicable for want of intimidation. ROA.588. Therefore, Bonds forfeited any such fact dispute. *Rollins v. Home Depot USA*, 8 F.4th 393, 397–98 (5th Cir. 2021) (finding that party "forfeited his argument that a fact dispute precluded summary judgment by failing to raise it first before the district court").

19

For starters, based on the undisputed facts, Bonds created a "disturbance" under § 97-35-13, whether or not she breached any peace. That is all that is required to violate § 97-35-13, as an attempt to "intimidate" is not necessary under that statute. And, as for § 97-35-15, it is obvious that Bonds made the statements about killing kindergartners to intimidate her car manufacturer's representative in an effort to have the representative take her request for help more seriously. Therefore, probable cause existed. *See Johnson v. City of San Antonio*, 2023 WL 3019686, at *8 (5th Cir. Apr. 20, 2023) (per curiam). At a minimum, Bonds's initial statement that she would kill twenty kindergartners could have led to a breach of the peace, which is all that is required for there to be a violation of § 97-35-15.

For all those reasons, probable cause existed to arrest Bonds. The district court erred as a matter of law by concluding otherwise, denying qualified immunity, and denying summary judgment as to Bonds's false-arrest, false-imprisonment, and malicious-prosecution claims asserted against Chief Woodall and Officer Milholen. For those reasons alone, this Court should reverse and render.

*Causation.* Bonds also fails to support the alleged constitutional violations with adequate causation evidence. "To be liable under § 1983, [a defendant] must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner v. Lieutenant Driver*, 848 F.3d 678, 695–96 (5th Cir. 2017); *see*

20

*also Alexander v. Smith*, 561 F. App'x 421, 423 (5th Cir. 2014) (per curiam) ("To prevail on a § 1983 claim, the plaintiff must show specific conduct by the officer that gives rise to the constitutional violation." (citing *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002)).

For one, Bonds lacks any evidence that Chief Woodall was personally involved in the initial decision to arrest her or any of the subsequent prosecutorial decisions. The district court did not address either of those arguments, though Defendants made them below. ROA.340; ROA.596–97. Still, it is undisputed that Officer Milholen arrested Bonds and that Chief Woodall was not present when Bonds was arrested. ROA.374. Moreover, Chief Woodall lacks any authority to prosecute Bonds. Therefore, Bonds has no evidence of a direct causal relationship between Chief Woodall's conduct and either her alleged false arrest or alleged malicious prosecution. For all those reasons, Bonds has presented insufficient evidence that any of her alleged constitutional injuries underlying her false-arrest, false-imprisonment, and malicious-prosecution claims were directly caused by Chief Woodall. Thus, each of those claims against Chief Woodall fails.

Likewise, Bonds lacks any evidence that Officer Milholen's conduct had a direct causal relationship to her alleged malicious prosecution. Viewing the evidence in a light most favorable to Bonds, Officer Milholen merely executed a criminal affidavit and filed it with the City Clerk after executing a warrantless arrest.

There is no evidence that he made any prosecutorial decisions, other than executing that post-arrest criminal affidavit.  For that reason, Bonds's malicious-prosecution claim against Officer Milholen fails.

*Bonds's Federal Malicious-Prosecution Claim Fails for Additional Reasons.* Of course, as discussed above, Bonds's federal malicious-prosecution claim fails due to the existence of probable cause and a lack of any evidence that either Chief Woodall or Officer Milholen's actions caused any alleged malicious prosecution. But there are two additional problems with her federal malicious-prosecution claim: First, she has abandoned that claim by failing to address it in her responsive briefing in the district court, and second, she has pointed to no specific evidence of malice.

First, abandonment.  In her summary-judgment briefing before the district court, Bonds did not mention her *federal* malicious-prosecution claim, defending only her state-law malicious-prosecution claim.  ROA.589 (referring to only one "malicious prosecution **claim**" and citing only state law in support of that claim (emphasis added)).  By failing to address or adequately support her federal malicious-prosecution claim in the face of Defendants' motion for summary judgment challenging that claim, Bonds has abandoned it.  *Terry Black's Barbecue, LLC v. State Auto. Mutual Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022) ("A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims.").

PD.60111953.2

Moreover, in addition to "absence of probable cause," an element of Bonds's federal malicious-prosecution claim is malice. *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023). But in her briefing to the district court, Bonds pointed to no specific evidence of malice in the record. ROA.589. Therefore, Bonds failed to meet her burden in response to Defendants' motion for summary judgment. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) ("The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." (alteration accepted)). For either reason, in addition to all those discussed above, this Court should reverse and render summary judgment as to Bonds's federal malicious-prosecution claim.

### 2. Deprivation-of-Liberty Due-Process Claim.

Bonds also asserts a due-process claim against Defendants, though she hasn't clearly articulated the basis for that claim. The district court grappled with the vagueness of that due-process claim, struggling to make sense of it without any organized argument from Bonds. First, the district court correctly rejected Bonds's due-process claim "[t]o the extent that [it] is based on detention without probable cause." ROA.667; *see also Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010) ("In *Albright*, the Court held that there was no Fourteenth Amendment 'liberty interest' or substantive due process right to be free from criminal prosecution unsupported by probable cause."); *accord Graham v. Connor*,

23

490 U.S. 386, 395 (1989) (explaining that where a particular amendment "provides an explicit textual source of constitutional protection" against a particular kind of government action, "that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims").

The district court then considered Bonds's Fourteenth Amendment due-process claim as a Fourth Amendment claim that she was held in custody without a prompt probable-cause determination by a judicial officer in violation of *Gerstein v. Pugh*, 420 U.S. 103, 123–25 (1975). ROA.668. Framing Bonds's due-process claim in that way led the district court to conclude that "[t]here is a genuine dispute of material fact as to whether the events occurring on April 14 or April 17 were 'prompt' enough not to offend the [C]onstitution and if or when the judge considered probable cause." ROA.668. In doing so, the district court erred in at least three ways.

*First*, whether the undisputed timeline violated the Constitution is a legal question, not a factual one. To be sure, there is no dispute of fact as to the timeline of events. On April 14, Judge McKenzie reviewed the criminal affidavit executed by Officer Milholen and ordered Bonds to remain in jail until the following Monday, April 17. ROA.244–45. When Bonds appeared before Judge McKenzie on April 17, Judge McKenzie set a bond, and Bonds did not bond out. ROA.446. She was held until April 19, when she was released on her own recognizance. ROA.211–12.

24

None of that is disputed, yet the district court concluded that a fact question existed as to whether that timeline was repugnant to the Fourth Amendment. ROA.667. But that is a legal question that the district court should have resolved. Indeed, courts, not juries, "determine [whether] the alleged conduct [did or] did not violate a constitutional right." *See Lytle*, 560 F.3d at 410.

Though causation-related questions persist with regard to these Defendants, Bonds's weekend stint in jail did not run afoul of the Constitution. Judge McKenzie reviewed documents in Bonds's case file and made a "prompt" determination within 24 hours of Bonds's arrest that Bonds should remain in jail until the following Monday. ROA.244; *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (holding that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirements of *Gerstein*.").

*Second*, the district court erred by concluding that there is a question as to whether or "when the [municipal court] judge considered probable cause." ROA.667. There is no evidence in the record that Judge McKenzie considered probable cause because municipal courts are not courts of record. *See supra* note 4. But that absence of evidence doesn't preclude summary judgment, for it is Bonds's burden to establish that there was no probable-cause determination within 48 hours or that "her probable cause determination was delayed unreasonably." *McLaughlin*, 500 U.S. at 56. Bonds points to no evidence that the municipal court did not make

such a probable-cause determination, aside from her own unsupported assertions and allegations. Thus, Bonds has failed to satisfy her burden at the summary-judgment stage. *Duffie*, 600 F.3d at 371 ("The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." (alteration accepted)).

*Third*, even assuming that there is a genuine dispute of material fact as to either of those questions, there isn't one as to whether any resulting constitutional violation was "causally attributable" to any of these Defendants; therefore, none of them may be held liable. *Johnson v. Bryant*, 1995 WL 29317, at *4 (5th Cir. Jan. 17, 1995) (per curiam) (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976)). Indeed, as the arresting officer, Officer Milholen cannot be held liable for constitutional wrongs occurring after he has booked Bonds in the jail and submitted his criminal affidavit absent any evidence that he personally delayed Bonds's appearance for a *Gerstein* hearing. *See id.*; *Jones v. Lowndes Cnty.*, 678 F.3d 344, 351 (5th Cir. 2012); *see also Turner*, 848 F.3d at 695–96 ("To be liable under § 1983, [a defendant] must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation."). And there is no evidence that the City of Magnolia holds a policy or custom, like the ones described in *Gerstein* or *McLaughlin* that was the

26

moving force behind any ostensible constitutional violation. Thus, any assumed constitutional injury could not be causally attributable to the City.

The only evidence to which Bonds points for purposes of causation is Chief Woodall's deposition testimony in which she stated that she personally "decide[s] whether [a] school teacher deserves a probable cause hearing [under Miss. Code Ann. § 99-3-28] by deciding whether [the teacher is] active within the scope for employment [sic]."[8]

That lone piece of evidence is insufficient because § 99-3-28 is wholly inapplicable to Bonds under the facts of this case. Section 99-3-28 provides:

> [B]efore an arrest warrant shall be issued against any teacher who is a licensed public school employee as defined in Section 37-9-1, . . . for a criminal act, whether misdemeanor or felony, which is alleged to have occurred while the teacher . . . was in the performance of official duties, a probable cause hearing shall be held before a circuit court judge.

Miss. Code Ann. § 99-3-28(1)(a)(i). Bonds has at least two problems with the application of this statute to the facts of her case, and therefore, she has two barriers to Chief Woodall's deposition establishing any causal relationship between Chief Woodall's actions and Bonds's prolonged confinement.

First, a teacher is only entitled to a probable cause hearing in circuit court if she'll be arrested for "a criminal act . . . which is alleged to have occurred while the

---

[8] To the extent that Bonds asserts that Chief Woodall acted as a final policymaker in doing so, that is wrong as a matter of law. *See infra* at 31–32.

teacher . . . was in the *performance of official duties*." *Id.* It can hardly be maintained that Bonds was performing her official duties as a schoolteacher when she made a personal call before school began regarding technical difficulties with her own personal vehicle. Bonds herself testified that those statements were made outside the scope of her employment. ROA.456.

Second, the statute expressly applies only where law enforcement seeks to obtain an arrest warrant, but the statute does not prohibit warrantless arrests, where otherwise appropriate. Miss. Code Ann. § 99-3-28(3) ("Nothing in this section shall prohibit a law enforcement officer from arresting any person under circumstances in which the law enforcement officer would not be required to seek a warrant from a court."). Because Bonds formally confessed to making threats to kill her kindergarten students after being read her rights, Officer Milholen had probable cause to arrest her without a warrant. *See Jones*, 678 F.3d at 348 ("[A] warrantless arrest supported by probable cause is constitutionally permissible."). Therefore, Bonds was not entitled to a § 99-3-28 probable cause hearing in circuit court prior to her arrest in this circumstance.

For all of those reasons, Bonds has failed to adequately support the existence of a constitutional violation undergirding her deprivation-of-liberty due-process claim. Therefore, that claim fails, and Defendants are entitled to summary judgment.

PD.60111953.2

**B.     Bonds Cannot Overcome Qualified Immunity.**

In any event, Bonds can't overcome Chief Woodall and Officer Milholen's assertions of qualified immunity.  "Once the defense of qualified immunity has been raised, the plaintiff has the burden of demonstrating that '(1) the official violated a statutory or constitutional right, and (2) the right was clearly established at the time.'"  *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1005 (5th Cir. 2023) (quoting *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019)).

For the reasons stated above, Bonds has failed to demonstrate that either Chief Woodall or Officer Milholen violated her statutory or constitutional rights.  And in the qualified-immunity context, her false-arrest, false-imprisonment, and malicious-prosecution claims fail to clear the even higher hurdle that the requisite probable-cause inquiry poses:  "[T]here must not even 'arguably' be probable cause."  *Brown*, 243 F.3d at 190. (quotation marks and citation omitted).  "That is, if a reasonable officer could have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply."  *Id.*

At summary judgment, Defendants need only point to "evidence that, at least arguably, established probable cause to arrest" Bonds.  *Brown*, 243 F.3d at 190.  Thus, to the extent that there is any question as to whether probable cause existed to arrest Bonds, the mere existence of that question does not defeat qualified immunity, *id.*, which is "an immunity from suit rather than a mere defense to liability." *Pearson*

29

*v. Callahan*, 555 U.S. 223, 237 (2009). The district court searched for objective confirmation of probable cause, not whether Defendants pointed to evidence that probable cause *arguably* existed, and thus misapplied the appropriate standard. ROA.661–66. As explained above, it is *at least arguable* that probable cause existed, and therefore, Chief Woodall and Officer Milholen were entitled to qualified immunity, and thus summary judgment, on those claims.

Even assuming that Bonds could clear that hurdle and present sufficient evidence that Officer Milholen and Chief Woodall violated some constitutional right of hers, she has not even attempted to demonstrate that such any such right was "clearly established." ROA.644–48. And the district court did not even address this "clearly established" prong of the qualified-immunity analysis, aside from mentioning the standard. ROA.672–74. Those failures alone warrant reversal here. *See Estate of Joseph v. Bartlett*, 981 F.3d 319, 329–30 (5th Cir. 2020) (explaining a plaintiff's burden to demonstrate that state actors violated "clearly established" law to overcome qualified immunity); *Watson v. Boyd*, 2 F.4th 1106, 1112 (8th Cir. 2021) ("While a district court may address the prongs in any order, it 'may not deny qualified immunity without answering both questions in the plaintiff's favor.'") (citing *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014)).

To meet that second prong of the qualified-immunity analysis, Bonds must have (1) identified a case (2) that is authoritative and (3) holds that the Defendants'

30

specific conduct at issue constituted a violation of law. *District of Columbia v. Wesby*, 583 U.S. 48, 62–65 (2018); *accord Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) ("It is the plaintiff's burden to find a case in his favor . . . ."); *Estate of Joseph*, 981 F.3d at 346 ("The Supreme Court strictly enforces the requirement to identify an analogous case and explain the analogy.").

The only authority to which Bonds points is *Gerstein*, arguing that her right to a probable cause determination by a judicial officer was violated. ROA.585. But as discussed above, Judge McKenzie reviewed her arrest paperwork the day after she was arrested and independently determined that Bonds would remain in jail until the following Monday, when she would appear before Judge McKenzie. Bonds points to no authority clearly establishing that the Constitution required Officer Milholen or Chief Woodall to release Bonds in defiance of Judge McKenzie's directive. ROA.584–87. For that reason, Officer Milholen and Chief Woodall were entitled to qualified immunity, and this Court should reverse and render summary judgment on all claims asserted against them.

### C.    Bonds Cannot Establish Municipal Liability.

Ordinarily, a municipality cannot appeal a denial of summary judgment unless the district court enters a final judgment or certifies the denial for interlocutory review under 28 U.S.C. § 1292. But this case falls within this Court's pendent appellate jurisdiction—a doctrine that provides *discretion* to adjudicate "closely

related issues" that correspond with this Court's jurisdiction over the qualified-immunity denial. *Janvey*, 840 F.3d at 256–57; *Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 453–54 (5th Cir. 1998); *Morin v. Caire*, 77 F.3d 116, 119–23 (5th Cir. 1996).

Courts across the country have explained that, "[w]here a municipality's claims are 'inextricably intertwined' with the qualified immunity analysis before the court, the court may exercise pendant appellate jurisdiction regarding municipal liability." *Peterson v. Heymes*, 931 F.3d 546, 556 (6th Cir. 2019). And because it cannot be shown that any of the individual defendants violated the Constitution, nothing the City of Magnolia did or did not do could possibly have led to a non-existent violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Stapleton v. Lozano*, 125 F.4th 743, 753–54 (5th Cir. 2025) (reviewing *Monell* claim on interlocutory appeal of qualified-immunity denial). Because Bonds cannot establish an underlying constitutional violation caused by the individual defendants, she cannot establish liability against the City. *See Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 847, 867 (5th Cir. 2012) ("Without an underlying constitutional violation, an essential element of municipal liability is missing." (citation omitted)).

And even assuming that she could, Bonds offered no legally sound argument for holding the City liable under § 1983. First, she argued that the City was not

32

entitled to qualified immunity—true enough—and that the City was therefore liable for "[a]ny violation of § 1983 by Defendant Woodall and/or Defendant Milholen." ROA.584.  But just because a City isn't entitled to qualified immunity doesn't mean that they are automatically liable anytime a constitutional violation occurs.  That argument is contrary to a wealth of precedent holding that a mere constitutional violation is never enough to establish municipal liability because municipalities are not responsible for the actions of their employees under a respondeat superior theory of liability.  *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).  Indeed, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.*

"To hold a municipality liable under § 1983, a plaintiff must 'show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.'"  *Verastique v. City of Dallas*, 106 F.4th 427, 432 (5th Cir. 2024) (quoting *Johnson v. Harris Cnty.*, 83 F.4th 941, 946 (5th Cir. 2023)).  Bonds never even attempted to satisfy that standard before the district court.  ROA.584.  But giving her summary-judgment briefing the benefit of

33

every doubt, she based her entire municipal-liability argument on the premise that Chief Woodall is a final policymaker for the City insofar as Chief Woodall determines the "policies for prosecution and incarceration of arrestees." ROA.576–77 ("*E.g.*, arrests and incarcerations with an affidavit do not require a warrant.").

That theory of municipal liability falters on at least three grounds. First, Chief Woodall is not a final policymaker under Mississippi law. To determine the final policymaker, courts look to state statutes. *See, e.g.*, *Hinojosa v. Tarrant Cnty.*, 2009 WL 1309218, *8 (N.D. Tex. 2009) ("As *Beattie* explained, an official may be a policymaker . . . only when so authorized by state statute[.]"). Mississippi Code § 21-19-15(1) is the relevant statute here, and it provides that "[t]he governing authorities of municipalities shall have the power to make all needful police regulations necessary for the preservation of good order and peace of the municipality[.]" The "governing authority," as used in § 21-19-15(1), for each of the Cities is their respective board or council. *See Groden v. City of Dallas*, 826 F.3d 280, 285 (5th Cir. 2016) (recognizing that "[u]nder Mississippi law the city council is the final policymaker."); *see also Adv. Tech. Bldg. Sols., LLC v. City of Jackson*, 817 F.3d 163, 167 (5th Cir. 2016) ("[W]e have affirmed that officials are not final policymakers when a supervisory board has the authority to reject their decisions."). Because any decision by Chief Woodall could ultimately be overruled

34

by the City's board or council, Chief Woodall is not the final policymaker under Mississippi law.

Second, Bonds points to no evidence creating a material issue of fact as to whether the City has delegated authority to Bonds and thereby conferred upon her final policymaking authority. To be sure, "[a] city's governing body may delegate policymaking authority (1) by express statement or formal action or (2) it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010). Bonds does not allege express delegation, and she offers no more than unsupported allegations that the City, by conduct or practice, encouraged or acknowledged Chief Woodall's exercise of final policymaking authority, aside from Chief Woodall's interpretation of a wholly inapplicable statute. *See supra* 26–27.

Finally, even assuming that Chief Woodall is a final policymaker under Mississippi law and that she had adopted a policy that officers may arrest and incarcerate individuals without a warrant, that alleged policy would not be the cause of Bonds's alleged constitutional injuries. For starters, that policy would be consistent with federal constitutional law so long as there is probable cause for a warrantless arrest. *Jones*, 678 F.3d at 348. And to the extent that Bonds alleges that Chief Woodall's purported policy was inconsistent with state law, such an injury is not actionable under § 1983. *See, e.g.*, *Baker*, 443 U.S. at 146 ("Section 1983

35

imposes liability for violations of rights protected by the Constitution, not for duties of care arising out of tort law."); *accord Moore v. Owens*, 244 F. App'x 547, 549 (5th Cir. 2007) (per curiam) ("[V]iolation of state law alone does not give rise to a cause of action under § 1983."); *Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir. 1991).

Moreover, there is no evidence that any such policy, even if it existed, was the "moving force" behind Bonds's alleged constitutional injuries. There is no evidence that Officer Milholen arrested Bonds according to some policy or directive from Chief Woodall, and there is no evidence that Chief Woodall's alleged policy caused Judge McKenzie—a state,[9] not a municipal actor—to issue an independent directive that Bonds was to remain in jail over the weekend without bond. Thus, Bonds has presented insufficient evidence to demonstrate that a City policy or custom was the moving force behind her alleged constitutional violations.

---

[9] Fifth Circuit precedent is clear: "[A] local judge acting in his or her judicial capacity is not considered a local government official." *Cunningham v. City of West Point*, 380 F. App'x 419, 421 (5th Cir. 2010) (quoting *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995)). Rather, local judges "act[] pursuant to state law" because they are "enforcing state law provisions." *Id.* at 422; *see also Carbalan v. Vaughn*, 760 F.2d 662, 665 (5th Cir. 1985) ("[i]f [the municipal judge] err[s] in the[ ] exercise [of judicial duties], the city is not liable simply because [he] held the office of municipal judge"); *Bigford v. Taylor*, 834 F.2d 1213 (5th Cir. 1988) (finding that a county judge was "effectuating the policy of the State of Texas[,]" not the county); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (explaining that "[o]nly with respect to actions taken pursuant to his or her administrative role can a judge be said to institute municipal policy"); *Krueger*, 66 F.2d at 77 (rejecting notion that a local judge's actions constituted an "official policy, practice, or custom of the governmental entity"); *Whisenant v. City of Halmot City*, 106 Fed. App'x 915, 917 (5th Cir. 2004) (rejecting municipal liability "because the relevant decisions were made by a municipal judge acting in his judicial capacity").

PD.60111953.2

For all those reasons, Bonds has presented insufficient evidence to establish municipal liability, and therefore this Court should reverse and render summary judgment in favor of the City.

## II.    Defendants Are Also Entitled to Summary Judgment on Bonds's State-Law Claims.

Bonds brought false-arrest, false-imprisonment, and malicious-prosecution claims against Defendants under state law. But under the Mississippi Tort Claims Act ("MTCA"), Bonds cannot hold both the City and these individual defendants liable for the same claims. The MTCA provides immunity for employees acting within the course and scope of their employment, making only the City liable where one of its employees "acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." Miss. Code Ann. §§ 11-46-5(1); 11-46-7(2); 11-46-9. But it provides immunity for municipalities where public employees act outside the course and scope of their employment, rendering the individuals liable for their own actions. *See* Miss. Code Ann. § 11-46-7; *see also Oliver v. Noxubee Cnty. Tax Dep't*, 200 F.3d 815 (5th Cir. 1999) (per curiam); *Smith v. City of Wiggins*, 2015 WL 6872230, at *13–14 (S.D. Miss. 2015). Thus, Bonds must essentially "pick a horse" as to which parties she seeks to hold liable for each of her state-law claims. *Hawkins v. City of Lexington*, 2021 WL 5236017, at *6–7 (S.D. Miss. July 9, 2021).

37

*False-Arrest and False-Imprisonment.* It appears from her complaint and her summary-judgment briefing that Bonds seeks to hold the City liable for false-arrest and false-imprisonment under a theory of reckless disregard. *See* ROA.584 (citing the standard for holding the City liable under the MTCA). Her complaint does not allege—with the exception of her malicious-prosecution claim, *see infra* note 11— that Officer Milholen or Chief Woodall were acting beyond the course and scope of their employment. And she alleges that they acted with "reckless disregard of [her] rights." ROA.25–26; *see also* ROA.23.

But aside from those unsupported allegations and a single reference to the MTCA standard for holding the City liable, Bonds made no argument in her summary-judgment briefing as to how she could hold the City liable under the MTCA. ROA.584. That is, in the district court, Bonds articulated exactly zero explanations for how either Officer Milholen or Chief Woodall acted with reckless disregard under the MTCA. ROA.567–89.

For that reason, she has abandoned both her false-arrest claim and her false-imprisonment claim. *Terry Black's Barbecue, LLC*, 22 F.4th at 459 ("A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims."). And even if she hasn't technically abandoned that claim, Bonds certainly failed to meet her burden at summary judgment by failing to point to specific evidence in the record supporting her claims or articulating the

38

precise manner in which that evidence supports her claims. *Forsyth*, 19 F.3d at 1537.

For either reason, Defendants are entitled to summary judgment as to Bonds's

state-law false-arrest and false-imprisonment claims.

Although Bonds made no argument as to how either Officer Milholen or Chief

Woodall acted with reckless disregard, the district court supplied one. According to

the district court, there is a question as to whether Bonds was sufficiently engaged

in criminal activity to support probable cause, and according to the district court, if

Officer Milholen arrested her without probable cause, there would be a question of

fact as to whether he did so with reckless disregard to Bonds's well-being.

ROA.675. The inappropriateness of the district court raising that argument *sua*

*sponte* aside,[10] that reasoning is legally inadequate. As discussed above, Bonds was

engaged in criminal activity whether or not "any perceived threat from [her]

distasteful comment had concluded by the time she was arrested." ROA.675. That

is, once Bonds made the threat, she had committed a crime, and probable cause

existed to arrest her for it. By the express terms of the statute, it makes no difference

whether she even had the intent or capability to carry out the threat at the time she

---

[10] "In our adversarial system of adjudication, we follow the principle of party presentation. The parties frame the issues for decision, while the court serves as neutral arbiter of matters the parties present. To put it plainly, courts call balls and strikes; they don't get a turn at bat." *Clark v. Sweeney*, 607 U.S. __, 2025 WL 3260170, at *1 (2025) (per curiam) (citations and quotation marks omitted).

made it. Miss. Code Ann. § 97-7-75(2). Thus, the district court erred by denying summary judgment.

*Malicious-Prosecution.* Finally, Bonds asserts a malicious-prosecution claim against Officer Milholen and Chief Woodall individually.[11]  To succeed on a malicious-prosecution claim under Mississippi law, "a plaintiff must prove six essential elements: '(1) the institution of a criminal proceeding; (2) by, or at the instance of, the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceeding; and (6) the plaintiff's suffering of injury or damage as a result of the prosecution.'" *Univ. of Miss. Med. Ctr. v. Oliver*, 235 So. 3d 75, 83 (Miss. 2017) (quoting *Strong v. Nicholson*, 580 So. 2d 1288, 1293 (Miss. 1991)).

Bonds devoted a sum-total of one paragraph in her summary-judgment briefing to her state-law malicious-prosecution claim. ROA.589. In that lone paragraph, Bonds did not point to any specific evidence supporting her claim; rather, she merely offers one vague statement—"the jury may infer malice from the facts of the case"—and another conclusory one—"[t]here are material issues of fact as to

---

[11] By definition, Bonds's malicious-prosecution claim may only proceed against the individual defendants because the City may only be held liable for the conduct of its employees occurring within the course and scope of those employees' employment. Miss. Code Ann. § 11-46-5(1). And "an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted . . . malice . . . ." Miss. Code Ann. 11-46-5(2).

whether or not Defendants acted with 'malice' as described in the above cases, prosecuting and arresting [] Bonds." *Id.* Neither of those statements come close to satisfying Bonds's burden in responding to Defendants' motion for summary judgment. *Forsyth*, 19 F.3d at 1537 (explaining that the nonmovant must "identify specific evidence in the record, and articulate the 'precise manner' in which that evidence support[s] [his] claim."). Because Bonds pointed to no specific evidence supporting a lack of probable cause or a finding of malice, the district court erred by denying summary judgment as to her state-law malicious-prosecution claim. ROA.347–48.

## CONCLUSION

Defendants moved for summary judgment pointing out the lack of evidence supporting Bonds's claims and pointing out her inability to overcome qualified immunity, overcome state-law immunity, or establish municipal liability. Bonds's response was totally inadequate, abandoned claims, and in many cases didn't even attempt to address the deficiencies pointed out by Defendants' motion for summary judgment. Because of Bonds's complete failure to adequately respond to Defendants' motion for summary judgment, Defendants are entitled to summary judgment. For that reason, this Court should reverse and render.

This, the 31st day of December 2025.

Respectfully submitted,

41

By:   */s/ Channing J. Curtis*

G. Todd Butler, Miss. Bar No. 102907
H. David Clark, III, Miss. Bar No. 104165
Channing J. Curtis, Miss. Bar No. 106637
PHELPS DUNBAR, LLP
1905 Community Bank Way, Ste. 200
Flowood, Mississippi 39232
Telephone: (601) 352-2300
Facsimile: (601) 360-9777

*Attorneys for Defendants-Appellants*

42

PD.60111953.2

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of December 2025, I electronically filed the foregoing PROPOSED CORRECTED BRIEF with the Clerk of Court of the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. All counsel of record is CM/ECF users and will be served by the appellate CM/ECF system.

Dated: December 31, 2025.

By:    */s/ Channing J. Curtis*
Channing J. Curtis

43

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Rule 32(a)(7) of the Federal Rules of Appellate Procedure because it contains 9,312 words, exclusive of the pages exempted by Rule 32(f).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-point Times New Roman font, and all footnotes are in 12-point Times New Roman font.

Dated: December 31, 2025.

By:    */s/ Channing J. Curtis*
         Channing J. Curtis

44